IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS E. LÓPEZ-SOTO, Petitioner, v. UNITED STATES OF AMERICA, Respondent. | CIV. NO.: 21-1071 (SCC) related to CRIM. NO.: 14-415-1 (SCC); CRIM. NO.: 14-637-4 (SCC) |

**OMNIBUS OPINION AND ORDER**

Pending before the Court is Carlos E. López-Soto's
("Petitioner") Motion to Vacate, Set Aside, or Correct
Sentence in Criminal Case Nos. 14-415, 14-637 pursuant to 28
U.S.C. § 2255 ("Section 2255"), *see* Docket No. 1.[1]  Before the
Court is also the Government's ("Respondent") Motion to
Dismiss, *see* Docket No. 16, and Second Motion to Dismiss, *see*
Docket No. 33.  For the reasons set forth below, the Court
**DENIES** the Petition, along with all of Petitioner's subsequent

---

[1]  In addition to the Section 2255 Motion, Petitioner filed the subsequent
motions tied to his initial request: Supplemental Motion to Vacate, Set
Aside, or Correct Sentence, *see* Docket No. 2; Supplement to
Memorandum in Support, *see* Docket No. 4; Response in Opposition to the
Government's Motion to Dismiss, *see* Docket No. 18; Memorandum of
Law in Support of Amended Grounds Numbers Eleven, Twelve and
Thirteen of Section 2255 Motion, *see* Docket No. 48; and Memorandum in
Support of Facts and Procedural History in Criminal Cases, *see* Docket
Nos. 63, 67.

filings, and **GRANTS** the Government's request to dismiss.[2]

## I. Background

### A. Relevant Factual Background

Between December 23, 2013, and June 4, 2014, Petitioner was a member of a group that committed several armed robberies across Puerto Rico. *United States v. López-Soto*, No. 14-415, Docket No. 400, pg. 14 (D.P.R. 2017).[3] The group included, alongside Petitioner, co-defendants Roberto García-Santiago, Luis Ruíz-Santiago, Juvencio Correa-Morales, and Jesús Ramírez-Cotto. *Id.* at pgs. 11–13. The group robbed various types of businesses such as retail stores and street vendors, the proceeds of which would be divided equally amongst the participants. *Id.* at pgs. 14, 16–17. Petitioner's burgundy Dodge Durango was used during these

---

[2] The Court notes that an interlocutory appeal occurred during the pendency of this action. Petitioner twice filed Motions for Leave to File an Amended Section 2255 Petition, *see* Docket Nos. 36, 46. Both motions were denied by the Court, *see* Docket Nos. 39, 47. Petitioner then filed an Interlocutory Appeal as to the Court's denial of his first motion. Docket No. 50; *see also* Docket No. 39. The First Circuit soon after issued its judgment dismissing the interlocutory appeal. Docket No. 64.

[3] Hereinafter: Crim. No. 14-415.

robberies.  *Id.* at pg. 15.

Petitioner was involved in four robberies between May and June 2014.[4]  After the last robbery, the group left the Dodge Durango at the residence of Roberto García-Satiago's mother.  *Id.*, Docket No. 417, pgs. 3–4.  On June 4, 2014, the group painted the vehicle with black spray paint to conceal it from detection.  *Id.* at pg. 5.  The sides and front of the car were painted, but the roof was left in the original color.  *Id.*, Docket No. 405, pg. 10.  Petitioner was arrested shortly thereafter.  *Id.*, Docket No. 408, pgs. 44–48.

## B.  PROCEDURAL HISTORY

On July 2, 2014, Petitioner was indicted and charged with one count of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (The Hobbs Act); one count of possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and two

---

[4] On May 4, 2014, Petitioner was involved in the robbery of a produce stand in Canóvanas, Puerto Rico.  Crim. No. 14-415, Docket No. 400, pgs. 20–27.  On May 17, 2014, Petitioner was involved in the robbery of a Claro store in Rio Grande, Puerto Rico.  *Id.* at pgs. 29–31.  On May 23, 2014, Petitioner was involved in the robbery of a Claro store in Arecibo, Puerto Rico.  *Id.* at pgs. 44–46.  Lastly, on June 3, 2014, Petitioner was involved in the robbery of an AT&T store in Lares, Puerto Rico.  *Id.* at pgs. 55–59.

counts of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*, Docket No. 20. On October 22, 2014, a Superseding Indictment was returned which charged Petitioner with one count of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); one count of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.*, Docket No. 30.

On October 22, 2014, Petitioner was indicted and charged in a separate case with one count of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), in violation of 18 U.S.C. § 1962(d); two counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951; one count of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2).  *United States v. López-Soto*, No. 14-637, Docket No. 3 (D.P.R. 2017).[5]  On February 26, 2016, the two cases were consolidated.  *Id.*, Docket Nos. 230, 231.

Assistant Federal Public Defender Jesús A. Hernández-García ("AFPD Hernández-García") was appointed as counsel for Petitioner in both cases.  Crim. No. 14-415, Docket No. 11; Crim. No. 14-637, Docket No. 23. Shortly thereafter, Petitioner moved for the appointment of new counsel.  Crim. No. 14-415, Docket No. 85; Crim. No. 14-637, Docket No. 139.[6]  AFPD Hernández-García responded to the motion.  Crim. No. 14-415, Docket No. 86.[7]  Thereafter,

---

[5] Hereinafter: Crim. No. 14-637.

[6] Petitioner asserted that Assistant Federal Public Defender Jesús A. Hernández-García ("AFPD Hernández-García") refused to request a line up and file a motion to suppress, and subsequently pressured him to enter into a plea agreement. Crim. No. 14-415, Docket No. 85, pgs. 1–3. Petitioner also claimed that AFPD Hernández-García answered affirmatively when asked if he would proceed with his requests for $100,000.  *Id.* at pg. 3.  Petitioner concluded by requesting to represent himself if alternative counsel could not be provided.  *Id.* at pg. 4.

[7] While counsel did not oppose the request, as he understood the attorney client relationship to be lacerated, he did address Petitioner's specific allegations against him.  Crim. No. 14-415, Docket No. 86, pg. 1.  Counsel stated that he fulfilled his duty of explaining the Government's plea offer to Petitioner but never pressured him to accept it.  *Id.* at pg. 3.  Counsel

AFPD Hernández-García moved to withdraw from both cases, citing Petitioner's continued filing of pro se motions against his advice, the lack of effective communication between them, and Petitioner's "serious allegations regarding the integrity of the undersigned counsel." *Id.*, Docket No. 123, 175. The Court granted the motion to withdraw, and thereafter appointed Attorney Kendys Pimentel-Soto and Attorney Marie L. Cortés-Cortés to represent Petitioner. Crim. No. 14-415, Docket No. 193; Crim. No. 14-637, Docket No. 149.

Despite the new appointments and warnings from the Court, Petitioner continued to pursue pro se filings.[8] These filings included additional motions for the appointment of new counsel. Crim. No. 14-637, Docket Nos. 150, 259. In November 2016, the Court held two hearings to evaluate

---

also vehemently denied that the payment conversation ever took place. *Id.* at pgs. 3–4.

[8] The Court specifically advised Petitioner that no pro se motions should be filed, and that all previously filed pro se motions were denied but could be refiled by counsel if appropriate. Crim. No. 14-415, Docket No. 192. On July 20, 2016, a motions hearing was held in which the Court again cautioned Petitioner against any further pro se filings. *Id.*, Docket No. 270.

Petitioner's requests for appointment of counsel and/or the waiver of legal representation. Crim. No. 14-415, Docket Nos. 446, 447. After advising Petitioner of his constitutional right to be represented by counsel and warning him as to the potential consequences of self-representation at trial, the Court allowed Petitioner to proceed pro se, with Attorney Pimentel-Soto and Attorney Cortés-Cortés acting as standby counsel. *Id.*, Docket No. 446, pg. 5.

Petitioner proceeded to trial representing himself. On December 19, 2016, the jury found Petitioner guilty of counts 1, 2, 3, and 4 in Case 14-415 and counts 1, 14, 15, 16 and 17 in Case 14-637. Crim. No. 14-415, Docket No. 510; Crim. No. 14-637, Docket No. 383. Petitioner was sentenced to a total imprisonment term of 744 months.[9] *Id.*

On June 1, 2017, Petitioner filed a notice of appeal. Crim. No. 14-415, Docket No. 516; Crim. No. 14-637, Docket No. 383. On May 21, 2020, the First Circuit determined that

---

[9] Petitioner was sentenced to 360 months of imprisonment as to count 1 in Crim. No. 14-415 and counts 1, 14, and 15 in Crim. No. 14-637; 84 months of imprisonment as to count 2, 3, and 4 in Crim. No. 14-415 and count 17 in Crim. No. 14-637; 300 months of imprisonment as to count 16 in Crim. No. 14-637. Crim. No. 14-415, Docket No. 509.

the sentence of 360 months of imprisonment for count 1 in Case 14-415 and counts 14 and 15 in Case 14-637 exceeded the statutory maximum of 240 months for the offenses.  Crim. No. 14-415, Docket No. 576; Crim. No. 637, Docket No. 426.  The First Circuit vacated the sentence in that respect and remanded for the District Court to enter a sentence of 240 months of imprisonment to be served concurrently.  *Id.*  On August 17, 2022, the Amended Judgment was entered. Crim. No. 14-415, Docket No. 617; Crim. No. 14-637, Docket No. 475. On February 12, 2021, Petitioner's timely Section 2255 Petition was entered.  Crim. No. 14-415, Docket No. 594; Crim. No. 637, Docket No. 442.

## II.  STANDARD OF REVIEW

"A prisoner in custody under sentence of a court established by Act of Congress…may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "[T]he statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4)

was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (citing *Hill v. United States*, 368 U.S. 424, 426–27 (1962)). Claims brought under the fourth category are only proper if they claim errors that "reveal fundamental defects which, if uncorrected, will result in a complete miscarriage of justice, or irregularities that are inconsistent with the rudimentary demands of fair procedure." *Id.* (quoting *Hill*, 368 U.S. at 428) (internal quotation marks omitted).

Importantly, a motion under Section 2255 is not a substitute for a direct appeal. *Id.* As a result, "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal." *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (quoting *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir. 2002)) (internal quotation marks omitted). In that event, the claim is barred from judicial review unless Petitioner can demonstrate both (1) "cause" for the procedural default and (2) "actual prejudice" resulting from the error asserted. *Id.* (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)).

### III. ANALYSIS

Petitioner raises claims of ineffective assistance of counsel during the pretrial and appellate stages of his case. Specifically, Petitioner alleges that his trial counsel failed to properly explain the Government's plea offer to him, causing him to reject it, *see* Docket No. 1-1, pgs. 1–7; failed to substantiate the Petitioner's use of a pellet gun by conducting a weapons inspection or securing an unedited copy of a video recording of the robbery, *see* Docket No. 1-2, pgs. 2–13; refused to file certain motions, forcing him to proceed pro se, *see id.* at pg. 45; failed to raise that he was not evaluated by a defense mental health expert, *see* Docket No. 1-3, pgs. 1–9; and refused to pursue a strategy related to mental incompetency, *see id.* at pgs. 12–14. Petitioner also asserts that his appellate attorney provided ineffective assistance of counsel by refusing to raise the District Court's failure to warn of the dangers of self-representation, *see* Docket No. 22-2, pgs. 5–9, and by failing to appeal Petitioner's sentence based on the applicable statutory maximum, *see id.* at pgs. 9–11.

To establish ineffective assistance of counsel, a defendant must show: "(1) that counsel's performance was

deficient, meaning that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense." *Rossetti v. United States*, 773 F.3d 322, 327 (1st Cir. 2014) (quoting *United States v. Valerio*, 676 F.3d 237, 246 (1st Cir. 2012)) (internal quotation marks omitted). In assessing counsel's performance, the Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

The Court will find deficiency in an attorney's performance "only where, given the facts known [to counsel] at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Rossetti*, 773 F.3d at 327 (citing *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)); *see also Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time

his tactical choices were made and implemented." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991).

To show prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Both prongs of the *Strickland* analysis are mandatory. As such, a "defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010). In sum, Petitioner holds the burden of satisfying both prongs of *Strickland* on each of his allegations of ineffective assistance of counsel. Noting that Petitioner has raised copious claims to that regard, the Court proceeds with its discussion by grouping the allegations thematically.

## A. PLEA OFFER

Petitioner alleges that his trial counsel failed to explain the Government's plea offer to him, causing him to reject it. Docket No. 1-1, pgs. 1–7. Specifically, Petitioner alleges that trial counsel failed to correct his belief that he would be subject to prosecution in both Puerto Rico and Federal Court

if he accepted the plea agreement. *Id.* at pg. 1. Petitioner further alleges that trial counsel refused to communicate his proposed counteroffer to the Government. *Id.* at pg. 7.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134 (2012). In order to demonstrate that a plea offer has lapsed or been rejected because of counsel's deficient performance, the petitioner must demonstrate a reasonable probability that (1) he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" and (2) that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" *Id.* at 147.

The record reflects that the parties commenced plea negotiations at a very early stage of the proceedings. On November 17, 2014, the Court held a status conference during which the Government informed the Court that a "plea offer was tendered." Crim. No. 14-415, Docket No. 52. On February 2, 2015, the parties informed the Court that plea negotiations were ongoing. *Id.*, Docket No. 84. On February

11, 2015, AFPD Hernández-García informed the Court that he had "discussed, and advised [Petitioner] regarding a plea offer tendered by the [G]overnment," which included explaining the "pros and cons of said plea" to Petitioner. *Id.*, Docket No. 86, pg. 3.  On August 28, 2015, after a hearing in which Petitioner addressed the Court, Attorney Pimentel-Soto was appointed as Petitioner's new counsel.  *Id.*, Docket No. 192.  Days later, Petitioner filed another motion for the appointment of counsel, within which he stated that "[c]ounsel has failed to correctly [inform] the defendant regarding [consequences] of ac[c]epting [the] plea offer."  *Id.*, Docket No. 195.  Petitioner did not provide any information to support this allegation.

The record clearly demonstrates that the plea offer tendered by the Government was communicated to Petitioner.  *Contra Missouri*, 566 U.S. at 147 ("Here defense counsel did not communicate the formal offers to the defendant. As a result of that deficient performance, the offers lapsed.").  Petitioner has not provided any evidence to contradict that AFPD Hernández-García discussed the plea agreement with him.  Crim. No. 14-415, Docket No. 86, pg. 3.

Rather, the Petitioner himself admits that the same plea agreement was presented and explained to him by Attorney Pimentel-Soto and Attorney Cortés-Cortés.  Docket No. 1-1 ("[Attorney Pimentel-Soto] presented me with a set of documents which she calls this is the government offer…[S]he mention[ed] [to] me that the offer was of 12 years without counting my criminal history, and that all the charges in the indictment would be dismiss[ed] if I pled guilty to count one.").

Petitioner does not allege that the attorneys misinformed him about the content of the plea agreement. Rather, he focuses on his misunderstanding of his exposure to state prosecution.  But, Petitioner's filings do not allege that he ever requested clarification from his counsel as to this assumption.  Docket No. 1-1, pgs. 1–9; Docket No. 2-1, pgs. 5–6.  Moreover, Petitioner attended and addressed the Court at numerous proceedings, during which he never expressed or implied his concern with the explanation provided by his attorneys.  Crim. No. 14-415, Docket Nos. 52, 84, 192, 331. Without any evidence to support these allegations and having on the record uncontradicted statements that the terms and

conditions of the plea offer were explained to Petitioner, he
cannot prosper on this claim.

The same is true of Petitioner's allegations regarding
the communication of a counteroffer to the Government.
Docket No. 1-1, pg. 7.    Petitioner's counteroffer was as
follows: "[T]he movant then expressed to the Attorney that he
want[ed] her to do a counteroffer to the [G]overnment and to
ask them if they could bring the offer down to (6) years." *Id.*
Petitioner alleges that Attorney Pimentel-Soto responded:
"The [G]overnment will not want that." *Id.* at pg. 10.  Even if
Attorney Pimentel-Soto expressed her doubts as to the
success of the counteroffer, Petitioner provides no evidence to
prove that it was never communicated.  *Contra United States
v. Rodríguez Rodríguez*, 929 F.2d 747, 751 (1st Cir. 1991) ("In the
government's opposition to [defendant's] § 2255 petition,
Assistant United States Attorney Ricardo Pesquera offered his
own recollection of the plea bargaining in [defendant's] case.
Pesquera said that [defense counsel] did communicate a
counteroffer to him.").

Lastly, Petitioner fails to demonstrate that he "would
have accepted the earlier plea offer had [he] been afforded

effective assistance of counsel." *Missouri*, 566 U.S. at 147. Petitioner's motion reflects his continued belief that the twelve year plea offer was unreasonable. Petitioner reasons that the enhancement points for firearms and injuries to victims should have been removed because a pellet gun was used and "no victim was ever hurt." Docket No. 1-1, pg. 7. Accordingly, Petitioner's allegations of ineffective assistance of counsel as to the plea bargaining process fail.

### B. WEAPONS INSPECTION AND VIDEO EVIDENCE

Petitioner alleges that his counsel was ineffective in failing to conduct a weapons inspection to prove that a pellet gun was used in the robberies. Docket No. 1-2, pgs. 2–5. Moreover, Petitioner claims that trial counsel failed to secure an unedited copy of a video recording of the robberies to demonstrate the weapon used. *Id.* at pgs. 5–10.

A review of the trial transcript leaves no doubt of the overwhelming evidence presented that clearly established that the weapons used in the robberies were legitimate firearms. Crim. No. 14-415, Docket No. 411, pgs. 89–93, 100–103; Docket No. 412, pgs. 20–21, 81; Docket No. 413, pgs. 44, 52; Docket No. 417, pgs. 103–113, 122; Docket No. 437, pgs.

27–29.  Moreover, the issue of whether a real or fake (toy, pellet, or otherwise) gun was used was raised at trial by Petitioner and his standby counsel.  *Id.*, Docket No. 438, pgs. 10–11, 39–42.

Regarding the video evidence, the First Circuit's opinion clearly established that the Government was ordered "to provide [Petitioner] with the recordings; [Petitioner] suggested at trial that he had seen them; and [Petitioner] did not thereafter raise the issue at the district court."  *Id.*, Docket No. 575, pg. 27.  As a result, the First Circuit concluded that Petitioner was not prejudiced by not having "sufficient time to review video recordings of the robberies."  *Id.*  Accordingly, Petitioner's allegation of ineffective assistance of counsel as to the weapons inspection and video evidence fails.

## C. PRETRIAL PRO SE MOTIONS

Petitioner alleges that his trial counsel was ineffective in refusing to file certain pretrial motions, leaving him no option but to file them himself.  Docket No. 1-2, pg. 45.[10]  "No

---

[10] Petitioner cites the following motions as those which he was forced to file pro se: Crim No. 14-415, Docket Nos. 284, 285, 286, 287, 288, 289, 290,

court has held that failure to file a motion *automatically* constitutes ineffective assistance of counsel." *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir. 1984). Rather, "there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance.'" *Knight*, 447 F.3d at 15 (quoting *Strickland*, 466 U.S. at 689)). Accordingly, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see, for example, Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) ("The trial record in this case clearly reveals that [defendant's] attorney failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence.").

On April 12, 2016, Petitioner filed a "motion to compel defen[s]e attorneys to file the following motions,"

---

291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 115, 117, 120, 143, 147, 213, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239.

accompanied by a list of docket numbers.  Crim. No. 14-415,
Docket No. 243.   At the subsequent status conference, the
Court requested that "defense attorneys file [an] informative
motion advising steps taken to address defendant['s]
requests."  *Id.*, Docket No. 258.   On June 7, 2016, Defense
counsel filed a motion informing the Court that "all motions
filed *pro se* had been discussed with [Petitioner]," and many
had "already been re-filed by counsel including the motion to
suppress the confession and the one related to expert
testimony." *Id.*, Docket No. 257, pg. 1.  Others, however, were
not pursued due to their lack of legal or factual support.[11]
Therefore, the record contradicts Petitioner's assertion that
the filing of certain pretrial motions was refused.  It further
provides context to the strategic considerations grounding the
decision not to pursue certain motions, whether indefinitely

---

[11] For example, counsel informed Petitioner that "there are no
participating informants in this case to which the *Roviaro* ruling may
apply."  Crim. No. 14-415, Docket No. 257, pg. 1.  In *Roviaro*, the Supreme
Court set forth the analytical framework to determine when the State must
reveal the identity of a confidential informant to the defense.  *Roviaro v.
United States*, 353 U.S. 53 (1957).  Given the absence of participating
informants, counsel rightly informed Petitioner that the pursual of a
*Roviaro* motion would be futile.

or at that stage of the proceedings.[12]  These strategic decisions are within the power of trial counsel.  *Strickland*, 466 U.S. at 689.

Petitioner also fails to show that he suffered prejudice because of his pro se filings.  The record reflects that the Court ruled on all of Petitioner's pro se motions and held numerous hearings to address the topic.  The Court also frequently cautioned Petitioner against filing motions while represented by counsel.  *Id.*, Docket Nos. 267, 270, 331.  Accordingly, Petitioner's allegation of ineffective assistance of counsel as to the filing of pretrial motions fails.

### D. MENTAL EVALUATIONS

Petitioner presents two allegations of ineffective assistance of counsel regarding the issue of his mental competency.  Firstly, Petitioner alleges that his prior counsel, AFPD Hernández-García, did not inform the Court or his subsequent counsel, Attorney Pimentel-Soto, as to the status

---

[12] For example, defense counsel provided Petitioner with legal advice as to the "substantial difference between the legal issues that can be raised at th[e] pretrial stage and at the end of the [G]overnment's case in chief."  *Id.*

of his mental evaluation.[13]    Docket No. 1-3, pgs. 1–9. Secondly, Petitioner alleges that Attorney Pimentel-Soto was ineffective in failing to pursue a defense strategy based on Petitioner's competency to stand trial.  *Id*. at pgs. 12–14.

To begin, Petitioner claims that AFPD Hernández-García provided ineffective assistance of counsel by failing to notify the Court that Petitioner was not evaluated by a mental health expert from the defense.  *Id.* at pgs. 1–9.  This claim is without merit, as the Court had access to the mental evaluation report, which clearly states the evaluator and assessment procedures.  Crim. No. 14-415, Docket No. 158, pg. 3 ("During his time at this institution, the defendant was interviewed and assessed by this evaluator.").  The absence of an evaluation from a defense expert is clear from the face of

---

[13] Petitioner admits that he was visited by a psychiatrist for the Defense and that he refused to be evaluated.  Docket 1-3, pg. 4 ("I told her that I am sorry but that I was not crazy and that what I need[ed] was a lawyer…I st[ood] up, g[a]ve her my hand, and left the room, then she left and I never again saw her.").  Petitioner also acknowledges that he was evaluated by the Government's expert, but that he was untruthful in his answers out of fear of being found incompetent.  *Id.* at pg. 5 ("I was not truthful because I though[t] that if I be truthful…that the Court will not entertain my motions and any of my claims.").

the report, eliminating the need for notification from counsel.

Next, Petitioner asserts that AFPD Hernández-García provided ineffective assistance of counsel by failing to communicate with Attorney Pimentel-Soto about the evaluation.   Docket No. 1-3, pgs. 1–9.   This claim is also meritless, as the record—which was accessible to Attorney Pimentel-Soto—clearly establishes Petitioner's evaluation was ordered, *see* Crim. No. 14-415, Docket Nos. 130, 132; a report of the evaluation was shared with the Court, *see id.*, Docket No. 158; defense counsel was given access to the report, *see id.*, Docket No. 170; and Petitioner was found competent to stand trial, *see id.*  Moreover, Attorney Pimentel-Soto accessed and reviewed the report, as Petitioner states: "[S]he came to see me one day. I remember that she [had] some documents in front of her on the table at the visiting room. She was looking at them and she told me that my mental evaluation has come and that I came out brilliant." Docket No. 1-3, pg. 11.

Lastly, Petitioner presents blanket claims that Attorney Pimentel-Soto failed to question AFPD Hernández-García about his strategy as to mental competency, to interview the

Government's expert, or to investigate Petitioner's "life." *Id.* at pgs. 11–13. Petitioner fails to provide any evidence to substantiate these claims. Nevertheless, the record contradicts any claim of mental incompetency. Not only was Petitioner found competent to stand trial, *see* Crim. No. 14-415, Docket No. 170, but the Court also found Petitioner sufficiently competent to represent himself at trial. *Id.*, Docket Nos. 331, 372. Moreover, a review of the transcripts of the 11-day trial reflects that Petitioner was representing himself in a diligent manner. There was no admonishing by the Court as to any sort of improper or inappropriate conduct by Petitioner. The record also reflects instances in which Petitioner received an order from the Court, understood the instruction, and tailored his defense accordingly. In sum, Petitioner's allegation of ineffective assistance of counsel as to his mental evaluation and competency fails.

### E. WAIVER OF RIGHT TO COUNSEL AND SELF-REPRESENTATION AT TRIAL

Petitioner claims that the Court erred in allowing his self-representation, stating that his waiver of his right to counsel was involuntary. Docket No. 1-2, pg. 42 ("I [knew] I

was waiving my [r]ight to counsel but I di[d]n't waive it voluntarily, I waive[d] it because I di[d]n't [h]ave any trust in the representation of Attorney Kendy Pimentel.").

The Sixth Amendment of the U.S. Constitution guarantees all criminal defendants the right to be represented by counsel. U.S. CONST. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence."). While a defendant is entitled to waive his right to counsel, there exists a "serious and weighty responsibility upon the trial judge [to determine] whether there is an intelligent and competent waiver by the accused." *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). This determination "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

"Although a defendant need not himself have the skill and experience of a lawyer in order [to] competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835 (1975).

There is no prescribed "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa*, 541 U.S. at 88. However, the record should establish that "[the defendant] knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

From the outset, the Court had before it a defendant who was adamant about self-representation. At very early stages of the case, Petitioner began requesting verbally and in writing his desire to represent himself. *See,* Crim. No. 14-415, Docket No. 85. Additionally, in clear disregard to the Court's instruction and warning, Petitioner continuously filed pro se motions related to his case and trial preparation. *See id.,* Docket No. 270.

Faced with Petitioner's repeated request for self-representation, the Court held two hearings on the matter. *Id.,* Docket Nos. 446, 447. Throughout the hearings, the Court explained the implications of renouncing his constitutional right to counsel repeatedly and in detail. *Id.,* Docket No. 447, pgs. 3–4. The Court clearly explained the dangers and disadvantages of proceeding pro se, including the potential

imposition of a harsh sentence, to Petitioner.  *Id.* at pgs. 4–5.
When prompted, Petitioner acknowledged his understanding
of these risks on several occasions.  *Id.* at pgs. 4–13.  To further
safeguard Petitioner's rights, the Court assigned Attorney
Pimental-Soto and Attorney Cortés-Cortés to remain as
standby counsel, given their "vast experience" and "technical
legal knowledge and training."  *Id.* at pgs. 4–5.

In conclusion, the Court was clear and effective in
warning Petitioner of the risks of self-representation and
made efforts to safeguard his rights despite his decision.
Accordingly, there is no doubt that Petitioner made his choice
"with eyes open."  *Adams*, 317 U.S. at 279.

### F.  Appellate Representation

Petitioner alleges that his appellate counsel provided
ineffective assistance of counsel by failing to contest the
Court's authorization of Petitioner's self-representation.
Docket No. 22-2, pgs. 5–9.  Petitioner also contends that
appellate counsel failed to argue that he was sentenced above
the maximum permitted by law for convictions in RICO and
Hobbs cases.  *Id*. at pgs. 9–11.

"The proper standard for evaluating [Petitioner's]

claim that appellate counsel was ineffective…is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 287 (2000). Accordingly, Petitioner must demonstrate that "counsel's performance was deficient" and that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, [] it is difficult to demonstrate that counsel was incompetent." *Smith*, 528 U.S. at 288 (referencing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.")).

"Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits." *Lattimore v. Dubois*, 311 F.3d 46, 57 (1st Cir. 2002) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Moreover, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at

751).   Accordingly, to successfully show that appellate counsel was ineffective, Petitioner must demonstrate that the issues ignored by appellate counsel were clearly stronger than those which he chose to advance, and that Petitioner was prejudiced due to that decision.

Petitioner fails to establish that his argument as to self-representation had a better likelihood of prevailing than those arguments which were raised by his counsel.  Petitioner's self-representation was one of the defining features of his case. The issue was the subject of countless filings and proceedings before the Court.  Considering the meticulous colloquy that occurred between the Court and Petitioner as to his self-representation, this Court doubts that the argument would have prevailed.  Crim. No. 14-415, Docket Nos. 446, 447. Accordingly, the Court concludes that Petitioner fails to satisfy his burden on this argument.

This leads to Petitioner's final allegation: that appellate counsel was ineffective by failing to raise the sentencing claim.  Appellate counsel included an argument as to the imposed sentence in his brief for Petitioner.  Brief for Appellant at 50–56, *United States v. Carlos Enrique López-Soto,*

960 F.3d 1 (1st Cir. 2018) (No. 17-1663) ("The Case Should Be Remanded For Resentencing."). This issue was decided in Petitioner's favor, as the First Circuit remanded the case, and Petitioner was resentenced to 240 months of imprisonment. Crim. No. 14-415, Docket Nos. 575, 617. Accordingly, Petitioner's allegations of ineffective assistance of appellate counsel fail.

### G. EVIDENTIARY HEARING

"A prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a matter of right." *David*, 134 F.3d at 477 (citing *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)). Rather, evidentiary hearings on Section 2255 petitions are "the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *McGill*, 11 F.3d at 225. A court may properly forgo an evidentiary hearing where "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the records, or are inherently incredible." *David*, 134 F.3d at 478 (citing *id.* at 225–

26) (internal quotation marks omitted).

Petitioner's motion and subsequent filings amount to nothing more than meritless claims that are contradicted or unsupported by the record. The Court has made a point to go over all the filings and arguments presented by Petitioner with a fine-tooth comb and has detailed them in this Omnibus Opinion and Order. There is no doubt in the Court's mind that Petitioner's constitutional rights were safeguarded throughout his case and that there were no instances of ineffective assistance of counsel by his attorneys. Accordingly, Petitioner's request for an evidentiary hearing is denied.

## IV. CONCLUSION

For the reasons previously stated, Petitioner's 28 U.S.C. § 2255 motion is **DENIED**. All additional filings by Petitioner are likewise **DENIED**. Petitioner's request for an evidentiary hearing is **DENIED**.

It is further ordered that no certificate of appealability should be issued because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2). This case is **DISMISSED WITH**

LÓPEZ-SOTO v. U.S.A.                                                    Page 32

**PREJUDICE**.  Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 4th day of September 2025.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE